# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| CORNELIUS WASHINGTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO.  4:13-cv-01129-JEO |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Cornelius Washington brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income. (Doc. 1).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The parties have consented to the jurisdiction of this court for disposition of the matter.  (Doc. 9).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

The Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on February 10, 2010, alleging disability beginning December 31,

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

2007. (R. 132-36).[2] His claim was denied initially. (R. 68). He then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 6, 2011. (R. 36-67). The Plaintiff was represented by counsel at the hearing. (R. 38). The ALJ concluded that the Plaintiff was not disabled.[3] (R. 32).

The Plaintiff requested the Appeals Council to review the ALJ's decision and submitted additional evidence regarding his disability. (R. 16, 214-54, 500-31). The Appeals Council declined the Plaintiff's request for review on April 17, 2013. (R. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. The Plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied. (Doc. 1).

## II. STANDARD OF REVIEW[4]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by

---

[2] References to "R. __" are to the page number of the administrative record, which is encompassed within Docs. 6-1 through 6-10.

[3] At the hearing, the ALJ noted that the case involved concurrent claims for disabled adult/child disability and for supplemental security income, both filed on February 10, 2010. (R. 38-39). In his written decision, however, the ALJ erroneously stated that the claim for disability benefits was filed on September 21, 2006, and that the claim for supplemental security income was filed on January 21, 2010. (R. 23). The ALJ also stated at the hearing and in his written decision that the Plaintiff's alleged disability onset date was March 31, 2008 (*see* R. 23, 39), although it appears from the summaries of the Plaintiff's disability and supplemental security income applications that the Plaintiff alleged an onset date of December 31, 2007. (R. 132-33). The court would note that when the ALJ stated at the hearing that the onset date was March 31, 2008, the Plaintiff's attorney did not express any disagreement with that date and later confirmed that there were no onset date issues in the case. (R. 39, 44). In any event, the discrepancies in the dates are not material and the Plaintiff has not raised any issues arising out of the discrepancies.

[4] In general, the legal standards applied are the same whether a claimant seeks disability insurance benefits or supplemental security income. However, separate, parallel statutes and regulations exist for disability insurance benefits and supplemental security income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner][6];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

---

[6] 20 C.F.R. Pt. 404, Subpt. P, App. 1. This subpart is also referred to as the "Listing of Impairments" or "the Listings."

## IV.  DISCUSSION

**A.    The Facts**

At the time of the ALJ's decision, the Plaintiff was twenty years old with a limited education, having left school during grade twelve without receiving a diploma.  (R. 44, 49). Prior to his alleged disability onset date, he worked for a few months at a car wash and three fast food restaurants.  (R. 146).  His application for disability benefits lists his conditions as bipolar disorder-type 2, impulsive control disorder, and asthma.  (R. 144).  He alleges in his application that he stopped working because of these conditions.  (*Id.*)

In 2006, at age 16, the Plaintiff was admitted to Mountain View Hospital after engaging in threatening behavior at school.  (R. 255).  He was diagnosed with "bipolar II disorder" and impulse control disorder.  (R. 256).  He was prescribed Risperdal, an antipsychotic medication. (*Id.*)  He was discharged after a short stay, with his treating physician assessing his prognosis as "[g]ood with continued treatment on an out-patient basis, medication compliance and positive family support."  (*Id.*)

The Plaintiff was examined by psychologist June Nichols on April 15, 2010.  (R. 336-39). Dr. Nichols assessed the Plaintiff as suffering from impulse control disorder and attention deficit/hyperactivity disorder ("ADHD").  (R. 339).  She assigned the Plaintiff a Global Assessment of Functioning ("GAF") score of 65[7] and concluded that the Plaintiff's "ability to relate interpersonally and withstand the pressures of everyday work is mildly compromised" and

---

[7]A GAF Score of between 61 and 70 indicates "**[s]ome mild symptoms** (*e.g.*, depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (*e.g.*, occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships**. *See* http://gafscore.com (last visited August 12, 2014) (bold in original).

that he does not have "deficits which would interfere with his ability to remember, understand and carry out simple work related instructions."  (R. 338-39).

Dr. Robert Estock, a non-examining psychiatrist, reviewed the Plaintiff's treatment records in May 2010.  (R. 341-54).  He found that the Plaintiff's impulse control disorder and ADHD are not severe impairments and that the Plaintiff has mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation.  (R. 341-51).

Since June 2010, the Plaintiff has received mental health treatment from CED Mental Health Center ("CED"), where he sees a counselor and a doctor once a month.  (R. 46, 443-61, 497-99).  He has been diagnosed as suffering from bipolar disorder- type I.  (R. 445-61).  CED has assigned him GAF scores ranging from 45 to 50.[8]  (R. 445-52, 497-99).  He has been prescribed antidepressants to treat his depression.  (R. 43).

At the hearing, the Plaintiff testified that he is not able to hold down a job and work regularly because "I just don't like being around a lot of people ... [and if] authority tells me to do something, I just might snap for no reason."  (R. 48).  He stated that the medication he has been prescribed at CED helps his condition, explaining that it "calms me down" and that "I don't stay stressed out as much."  (R. 53-54).  He also stated, however, that the medication does not help him to the point where he thinks he could function in a job.  (R. 54).  He testified that he experiences manic/depressive cycles and that his medication reduces his cycles from three or four

---

[8] A GAF Score between 41 and 50 indicates "**[s]erious symptoms** (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (*e.g.*, no friends, unable to keep a job)."  See http://gafscore.com (last visited August 12, 2014) (bold in original).

a day to about one a day. (R. 55-56). When questioned by the ALJ, he conceded that he has never experienced any manic episodes. (R. 58-59).

**B.      Findings of the ALJ**

After consideration of the entire record before him and application of the sequential evaluation process, the ALJ made the following findings:

The ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through February 6, 2012, and that he had not engaged in substantial gainful activity since March 31, 2008, the alleged onset date of his disability.[9] (R. 25).

The ALJ found that the Plaintiff has the severe impairment of bipolar disorder, but that he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25-26).

The ALJ determined that the Plaintiff has the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels, subject to the following nonexertional limitations: he can understand, remember, and carry out simple instructions, but not complex or detailed instructions; and he should do no work involving contact with the general public, close proximity to co-workers, or frequent direct supervision.[10] (R. 27-30). The ALJ further determined that the Plaintiff can handle routine changes in a work setting and make basic judgments about safety. (*Id.*)

The ALJ found that the Plaintiff has no past relevant work. (R. 30). Based on the

---

[9]*See* footnote 3.

[10]Residual functioning capacity is the most a claimant can do despite his impairment(s). *See* 20 C.F.R. § 404.1545(a)(1).

testimony of a vocational expert, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that the Plaintiff can perform. (R. 31, 62-64). The ALJ thus concluded that the Plaintiff is not disabled. (R. 32).

**C.     Analysis**

The Plaintiff urges the court to reverse or remand the Commissioner's decision to deny him benefits on five grounds: (1) the ALJ failed to develop the record; (2) the Appeals Council inadequately reviewed the Plaintiff's new evidence of disability and failed to remand the case based on the new evidence; (3) the ALJ's hypothetical question to the vocational expert did not fully state the Plaintiff's impairments and limitations; (4) the ALJ failed to state adequate reasons for finding the Plaintiff not credible; and (5) the ALJ improperly concluded that the Plaintiff's impairment did not meet Listing 12.04. (Doc. 1 at 11-27). The court will address each argument in turn.

**1.     The ALJ Fully Developed the Record**

The Plaintiff asserts that the ALJ failed to fully develop the record because he failed to obtain "important relevant records" that were in existence prior to December 6, 2011, the date of the hearing. (Doc. 10 at 11-12). Specifically, the Plaintiff contends that the ALJ failed to obtain five treatment records from CED dated April 10, 2010; June 1, 2010; July 22, 2010; October 19, 2011; and November 2, 2011. (*Id.*) The Plaintiff included these records in his post-hearing submission to the Appeals Council.[11] (R. 502-12, 524, 527).

---

[11] The treatment record that the Plaintiff contends is dated April 10, 2010, is actually dated August 10, 2010. (R. 512). This is confirmed by the fact that the Plaintiff was not referred to CED until June 1, 2010. (*See* R. 454-457).

The Plaintiff's argument is not well taken. First, the three CED records from 2010 were, in fact, obtained prior to the hearing and were part of the record before the ALJ. (*See* R. 451-461). Second, although the CED records from October and November 2011 were not obtained prior to the hearing, the Plaintiff has not shown–or even attempted to show– how the absence of those two records resulted in prejudice or unfairness to him. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) ("in evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (internal quotations omitted). Indeed, the record before the ALJ included records reflecting the Plaintiff's treatment at CED from June 2010 through September 2011. (R. 443-61, 497-99). Those records contain ample discussion of the Plaintiff's symptoms, clinical diagnoses, and treatment at CED. The absence of two additional CED records from October and November 2011–records that merely reflect a continuation of the Plaintiff's ongoing treatment at CED–does not warrant a remand for failure to develop the record. The ALJ developed a full and fair record.

2. **The Appeals Council Adequately Considered the Plaintiff's Additional Evidence**

After the ALJ rendered his decision that the Plaintiff was not disabled, the Plaintiff requested review by the Appeals Council and provided the Appeals Council with additional evidence consisting of treatment records from Riverview Regional Medical Center dated February 23-24, 2012 (R. 226-40); a "Social Security Disability Questionnaire" completed by Dr. Marin Tulao on March 1, 2012[12] (R. 214-15); a report of a psychological evaluation performed by Dr. David Wilson on July 25, 2012 (R. 219-23); a "Mental Health Source

---

[12] The Social Security Disability Questionnaire is not dated, but the Plaintiff's attorney stated in her letter brief to the Appeals Council that the questionnaire was completed by Dr. Tulao on March 1, 2012. (*See* R. 190).

Statement" completed by Dr. Wilson on July 30, 2012 (R. 224-25); and various CED treatment records from June 2010 through June 2012. (R. 216-18, 241-54, 500-31). The Plaintiff argues that the case should be remanded because the Appeals Council inadequately reviewed this additional evidence. (Doc. 10 at 12-17).

The Eleventh Circuit has addressed the issue of judicial review of new evidence submitted to the Appeals Council as follows:

> The Appeals Council has discretion not to review the ALJ's denial of benefits; however, if the claimant submits new noncumulative and material evidence to the Appeals Council after the ALJ's decision, it must consider such evidence where it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Appeals Council must adequately evaluate the new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980). Where the Appeals Council does not adequately evaluate new evidence, but instead perfunctorily adheres to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence. *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).
>
> .... When new evidence is submitted to and accepted by the Appeals Council and it denies review, the district court conducts a new review of the evidence independently of the Appeals Council. [*Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1266 (11th Cir. 2007)]. The district curt must consider the new evidence submitted to the Appeals Council and determine whether the Commissioner's decision is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b); *Id.* "[B]ecause a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review." *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (per curiam) (citing *Ingram*, 496 F.3d at 1262).

*Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 941 (11th Cir. 2014).

Here, the treatment records from Riverview Regional are not material and do not relate to the period on or before the date of the ALJ's decision. They concern treatment the Plaintiff received when he injured his right hand in February 2012, two months after the ALJ rendered his

decision on December 19, 2011. The records are not relevant or probative to the issue of whether the Plaintiff was disabled on or before that date due to a psychological impairment.

Dr. Tulao's Social Security Disability Questionnaire was completed on March 1, 2012, more than two months after the ALJ issued his decision. Dr. Tulao expressed the opinion that the Plaintiff is "disabled" and that the disability began on an "undetermined" date. (R. 214). Dr. Tulao listed the following causes of the Plaintiff's disability: "fatigue, diminished ability to think or concentrate, flight of ideas or subjective experience that thoughts are racing, and attention too easily drawn to unimportant or irrelevant external stimuli." (*Id.*)

Although Dr. Tulao's opinion was expressed after the date of the ALJ's decision, Dr Tulao was one of the Plaintiffs's treating doctors and his opinion was based on his examination of the Plaintiff five times between September and December 2011. (*Id.*) Therefore, the opinion could bear on the Plaintiff's condition on or before December 19, 2011. The court concludes, however, that the opinion expressed by Dr. Tulao in the Social Security Disability Questionnaire is not material. The opinion does not reference any specific medical findings or diagnoses, and the symptoms Dr. Tulao identifies were already documented in the medical records before the ALJ. (*See, e.g.,* R. 448). Moreover, Dr. Tulao's opinion that the Plaintiff is "disabled" is a determination reserved for the Commissioner and is, by rule, given no special weight. *See* 20 C.F.R. § 404.1527(d)(1) ("[T]he Commissioner] [is] responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability.... A statement by a medical source that [the claimant] [is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant] [is] disabled."); *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("While [the examining

physician] generally opined that if untreated, [the claimant's] condition would likely prevent her from maintaining gainful employment, this was not a medical assessment, but simply an opinion on an issue reserved to the Commissioner's discretion."). As the Eleventh Circuit has stated, "we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Because Dr. Tulao's opinion does not reference any new medical findings or diagnoses and simply provides his opinion of the legal consequences of the Plaintiff's condition, the court finds that his opinion does not create a reasonable possibility of changing the ALJ's decision and therefore is not material. *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (New evidence is material "if it is relevant and probative so that there is a reasonable possibility that it would change the administrative result.") (citations omitted).

Unlike Dr. Tulao, Dr. Wilson was not one the Plaintiff's treating doctors. His psychological examination report and mental health statement are based solely on an examination he performed in July 2012, seven months after the date of the ALJ's decision. They reflect nothing more than his assessment of the Plaintiff's mental health as of July 2012 and do not relate to the period on or before the date of the ALJ's decision. *See Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 801-02 (11th Cir. 2008) (noting that three reports submitted by the claimant to the Appeals Council "came after [the date of] the ALJ's decision and, therefore, the AC does not consider them in determining whether to review the ALJ's decision").

The bulk of the additional evidence the Plaintiff submitted to the Appeals Council

consists of CED treatment records from June 2010 through December 20011 and a single record from June 2012. The Appeals Council considered this evidence, but concluded that it did not render the ALJ's decision contrary to the weight of the evidence and did not provide a basis for changing the decision. (R. 2). The court agrees. As previously noted, the CED treatment records from June 2010 through September 2011 were not new and were already in the record before the ALJ. (*See* R. 443-61, 497-99). The CED treatment records from October through December 2011 and from June 2012, while new, are not material and do not create a "reasonable possibility" of changing the ALJ's decision.[13] The ALJ found that the Plaintiff has the severe impairment of bipolar disorder. (R. 25). In making this finding, the ALJ reviewed medical records from multiple sources, including the full array of CED records from June 2010 through September 2011. The additional CED records from October through December 2011 and June 2012 simply reflect the ongoing treatment the Plaintiff was receiving at CED. They do not reflect any change in his condition or any new or different assessment of his condition.

In sum, the Appeals Council did not err by failing to provide a "thorough explanation" of its decision to deny review.[14] [15] The additional evidence the Plaintiff submitted to the Appeals

---

[13] In addition, the record from June 2012 does not relate to the period on or before the date of the ALJ's decision.

[14] The court would note that the Appeals Council did address the Plaintiff's additional evidence in its notice of denial. The Appeals Council stated that the additional CED records "[did] not provide a basis for changing the [ALJ's] decision" and that the Plaintiff's other evidence "was about a later time" and "did not affect the decision about whether [the Plaintiff was] disabled beginning on or before December 19, 2011," the date of the ALJ's decision. (R. 2).

[15] The Commissioner argues that the Appeals Council's notice of denial complies with the guidelines in Hearings Appeals and Litigation Law Manual (HALLEX) I-3-5-20 for reviewing additional evidence. (Doc. 11 at 6-7). The court agrees that the Appeals Council appears to have followed the HALLEX guidelines. However, the Eleventh Circuit has stated that it would be a "very big assumption" to assume that the HALLEX carries the force of law, *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009), and a number of other circuit courts have expressly held that the HALLEX does not carry the force of law. *See, e.g., Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir.

Council was neither noncumulative nor material, and much of it was not new. Even considering the additional evidence submitted by the Plaintiff, the Commissioner's decision is not contrary to the weight of the evidence.

### 3. The ALJ Properly Included Plaintiff's Limitations in the Hypothetical Question Posed to the Vocational Expert

"In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The Plaintiff argues here that the vocational expert's testimony regarding his ability to work did not constitute substantial evidence because the ALJ's hypothetical question did not include all of his limitations. (Doc. 10 at 18-19).

The ALJ questioned the vocational expert as follows:

> Q.  Dr. Crunk, I want you to assume that we have an individual, ranging from 19 to 21 years of age during the period in question, or perhaps 18 – let's go all the way to 18. He had a limited education. Although he went to school for 12 years, he did not earn credits, did not get a high school diploma.
>
> He has no past relevant work for our purposes. The work that he's done in the past was not – wasn't done long enough, and he has not earned enough money for it to be relevant for our purposes.
>
> I want you to assume, for purposes of this question, that there are no impairment-caused limitations on the Claimant's exertional abilities. He can sit, stand, walk, lift, carry, push, and pull without impairment-caused limitations.
>
> He has no limitations on his other, non-exertional physical abilities, such as climbing, balancing, stooping, reaching, etc. He has no limitations in vision, or hearing, or smell, or taste.

---

2003) (HALLEX "does not prescribe substantive rules and therefore does not carry the force and effect of law'); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) ("[H]ALLEX does not carry the authority of law"). This court is unwilling to assume that the HALLEX has the force and effect of law and, therefore, does not find the Appeals Council's apparent compliance with the HALLEX guidelines to be controlling.

>He has no environmental limitations. For the purpose of this question, I want you to assume that he would be able to understand, remember, and carry out simple instruction but not complex or detailed instructions.
>
>He would be able to work in a setting where he did not deal with the general public, was not in a particularly close proximity to co-workers, and received minimal supervision once the job was explained.
>
>If we took that set of assumptions, could such an individual perform any full-time work which exists in the national economy?
>
>A.   Yes, your honor.

(R. 62-63).

In his Memorandum in Support of Disability, the Plaintiff appears to argue that the above question ignored his bipolar disorder. (*See* Doc. 10 at 19). Although the ALJ may not have used the words "bipolar disorder" in his question, the ALJ adequately accounted for the Plaintiff's psychological limitations when he told the vocational expert to assume that the Plaintiff could not follow complex or detailed instructions and needed to work in a setting where he did not deal with the general public, was not in close proximity to his co-workers, and received only minimal supervision. These were the very factors the Plaintiff testified to as having impacted his past employment. (*See* R. 48-49). The ALJ properly included these conditions in the hypothetical question he posed to the VE.

The Plaintiff also contends that the ALJ's hypothetical question improperly assumed that he could work. (Doc. 10 at 18). This is an argument of semantics. It is the ALJ's duty to question the vocational expert as to what, if any, jobs a claimant can perform given the claimant's limitations. In order to do so the ALJ must ask the vocational expert to consider the claimant in terms of his ability to function in a workplace. There was nothing improper about

that aspect of the ALJ's question.

The ALJ found that the Plaintiff had the RFC to perform a full range of work subject to several nonexertional limitations, all of which he included in his hypothetical question to the ALJ. (R. 27). Substantial evidence supports this finding. Accordingly, the ALJ's hypothetical question to the vocational expert was proper.

### 4. The ALJ Properly Considered Plaintiff's Credibility

The Plaintiff next argues that the ALJ failed to state adequate reasons for finding him not totally credible. (Doc. 10 at 19-20). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("we will evaluate your statements in relation to the objective medical evidence and other evidence in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence....").

> Here, the ALJ articulated the reasons behind his credibility determination:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. He has maintained a three-year relationship with his girlfriend and testified that his application for disability benefits keeps him from having to make child support payments to his two-year old son's mother. This would appear to be at least a part of the claimant's motivation for his application for benefits. His description of daily activities is not very limited and he can function socially with his girlfriend. He has regular custodial visitation every other weekend ... with his son. The injury to his finger is because he was working on a four-wheeler for someone.

(R. 30). These reasons provide a sufficient basis for the ALJ's finding that the Plaintiff's

testimony concerning his disability was not totally credible.

>  5.  **The ALJ Properly Concluded that the Plaintiff's Impairment Did Not Meet Listing 12.04 A3 (Bipolar Syndrome)**

The Plaintiff's final argument is that his impairment meets the requirements of Listing 12.04, specifically Listing 12.04 A3 (bipolar syndrome). (Doc. 10 at 20). To be found disabled under the listings, a claimant must show that he is incapable of performing *any* gainful activity, not just "substantial gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a) (the listings describe impairments "severe enough to prevent a person from doing any gainful activity"). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (the purpose of the listings is to identify "those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background").

To satisfy the criteria of a listing a claimant must demonstrate not only a symptom requirement but also a severity requirement. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). In addition, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

To meet the severity requirement under Listing 12.04, a claimant must satisfy the "paragraph B" criteria by showing that his impairment has resulted in at least two of the following limitations: marked restriction of activities of daily living; marked difficulties in

maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 B. "Marked" as a standard for measuring the degree of limitation means more than moderate but less than extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Here, the ALJ concluded that the Plaintiff demonstrated only mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. (R. 26-27). The ALJ also noted that the medical record did not reflect any episodes of decompensation of extended duration. (R. 27). He thus found that the Plaintiff's mental disorder did not meet or medically equal the criteria of Listing 12.04. (R. 26).

As support for his argument that he meets Listing 12.04 A3, the Plaintiff merely summarizes the CED treatment records and the submissions from Dr. Tulao and Dr. Wilson without explaining how any of this evidence demonstrates that two of the required "paragraph B" criteria were satisfied. (Doc. 10 at 22-27). He seems to imply that Dr. Wilson's mental health statement, which reflects Dr. Wilson's opinion that the Plaintiff has "extreme" limitations in a number of functional areas, establishes the "paragraph B" criteria. As previously discussed, however, Dr. Wilson's mental health statement (as well as his psychological examination report) is based on an examination Dr. Wilson performed in July 2012, seven months after the ALJ issued his decision on December 19, 2011. Therefore, the mental health statement cannot be relied upon as evidence of the severity of the Plaintiff's functional limitations during the period on or before that date.

The ALJ found that the Plaintiff's functional limitations during the relevant period were either mild or moderate and that the Plaintiff did not meet the requirements of Listing 12.04. The

Plaintiff has failed to establish that these findings, which are supported substantial evidence, were erroneous.

## V. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED**. An appropriate order will be entered separately.

**DONE**, this the 12th day of August, 2014.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge